UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ALLIANCE CAPITAL INTERNATIONAL
BANK,

                          Petitioner,               24-cv-2368 (PKC)

                -against-                 OPINION AND ORDER

WADIAH CAPITAL,

                        Respondent.
------------------------------------------------------------x

CASTEL, U.S.D.J.,

           Petitioner Alliance Capital International Bank ("Alliance") has filed this Petition,
pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 9, to confirm an arbitration award
issued to it by JAMS.  Alliance also seeks pre- and post-judgment interest, as well as its costs in
this proceeding.  Respondent Wadiah Capital has opposed confirmation through an affidavit
from its principal, Shlomo Ovadiah, which requests that the Court vacate the award.  The
affidavit was submitted to the Court nearly four months after the arbitration award was filed.
Wadiah Capital's opposition largely stems from the fact that the arbitrator declined to postpone
or cancel the arbitration hearing after Ovadiah, on the morning of the first day scheduled for the
hearing, informed the participants that he would be unable to attend due to an unspecified
personal matter.  For reasons that will be explained, Alliance's Petition will be granted as to
confirmation of the award and pre-judgment interest.

BACKGROUND

           On January 5, 2023, Alliance and Wadiah Capital entered into an agreement
whereby Alliance deposited funds with Wadiah Capital, which was in turn required to process
payment orders for Alliance.  (Pet., ECF 1 ¶ 3.)  However, Wadiah Capital failed to process two

payment orders for Alliance totaling $2,015,859.46.  (Id.)  Following demands from Alliance to return the funds, and Wadiah Capital's delay in doing so, the parties entered into a "Payment Agreement" pursuant to which Wadiah Capital accepted its obligation to return the funds and committed to remit the principal amount plus any accrued interest by September 28, 2023.  (Id.; Pet. Ex. B, ECF 1 at 17-18 §§ 1.1, 1.4.)  The Payment Agreement contains a valid and enforceable arbitration provision requiring both parties to submit their disputes to binding arbitration administered by JAMS.  (Pet. Ex. B at 19 § 2.4.)  Despite their agreement, Wadiah Capital failed to remit the funds to Alliance by the September 28 deadline.  (Pet. Ex. A, ECF 1 at 9.)

On October 25, 2023, Alliance filed a demand for arbitration against Wadiah Capital with JAMS.  (Pet. ¶ 9; Pet. Ex. C, ECF 1 at 23.)  After JAMS commenced the arbitration, Alliance's counsel and Ovadiah, responding on behalf of Wadiah Capital, agreed to attend an initial conference call with the Hon. James C. Francis (Ret.), the appointed arbitrator, on January 9, 2024.  (Pet'r. Resp. Ex. J, ECF 15-10 at 1-4.)  During that call, Alliance's counsel and Ovadiah agreed that the arbitration hearing would take place on February 5 and, if necessary, February 7.  (Pet'r. Resp., ECF 15 ¶ 9; Pet. Ex. A at 9.)  JAMS issued a "Notice of Hearing" ten days later.  (Pet. Ex. C at 23.)  On February 1, JAMS emailed Alliance's counsel and Ovadiah to inform them that the February 5 and February 7 hearing dates had been removed from the calendar due to Wadiah Capital's failure to pay its arbitration fees.  (Pet'r. Resp. Ex. K, ECF 15-11 at 4-5.)  That same day, Alliance's counsel replied that Alliance would be willing to advance Wadiah Capital's fees in order to reinstate the hearing dates.  (Id. at 2-4.)  Ovadiah did not respond to JAMS's outreach or Alliance's proposal.  (Id. at 1-5.)  The arbitrator accepted this arrangement.  (Id. at 1.)  On February 2, Alliance paid Wadiah Capital's fees.  (Pet'r. Resp. Ex.

L, ECF 15-12 at 2.) JAMS emailed the parties new Zoom videoconference links for the
February 5 session on the same day. (Pet'r. Resp. Ex. E, ECF 15-5 at 9-10.)

   On the morning of February 5, Ovadiah sent an email stating that he had just
arrived from travel during which he lacked internet access and could not attend the hearing
"since I have other commitments scheduled and prefer not to rush . . . our meeting." (Id. at 7.)
JAMS responded, "Please be advised that new zoom links were sent out for today's hearing as
JAMS originally removed this hearing from [the] calendar. The Arbitrator granted reinstating
this hearing." (Id. at 6.) After Ovadiah reiterated that he could not attend, Alliance's counsel
replied that they still planned to attend the hearing. (Id. at 5.) The arbitrator then answered,
"The hearing will proceed today as scheduled." (Id. at 4.) Ovadiah proceeded to request a
cancellation from the arbitrator, explaining that "[t]his is just a situation that is a private matter
that I cannot avoid" and indicating that he still planned to attend the February 7 session. (Id. at
3-4.) Once again, the arbitrator wrote, "As indicated, the hearing will proceed today and, if
necessary, on Wednesday as well." (Id. at 3.) Recognizing that the hearing would not be
postponed despite "a personal matter requiring [his] attention," Ovadiah added that proceeding
without him "may reflect a degree of bias or animosity towards [him]" and suggested that he
would request a new arbitrator. (Id. at 1-2.) This prompted further objection from Alliance's
counsel. (Id. at 1.)

   The February 5 session went ahead without Ovadiah or anyone else appearing on
Wadiah Capital's behalf. (Pet. Ex. A at 10.) On February 7, Ovadiah emailed JAMS to object to
the fact that the earlier session was not postponed. (Ovadiah Aff. Ex. F, ECF 13 at 80-81.)
Ovadiah challenged the arbitrator's fairness and impartiality, requested that JAMS appoint a new
arbitrator, sought to annul any determinations made at the hearing, and declined to bear any costs

for the session.  (Id.)  There was no hearing held on February 7.  (Pet. Ex. A. at 6.)  The

arbitrator issued a Final Award on February 21, 2024, which was filed on the JAMS case

management platform the next day.  (Id. at 6-15; Pet. Ex. C at 23; Pet'r. Resp. Ex. C, ECF 15-3

at 1.)  In the award, the arbitrator explained that he proceeded with the scheduled February 5

hearing "in light of the likely prejudice to Alliance from further delay and Mr. Ovadiah's failure

to specify the 'personal matter' purportedly precluding his attendance."  (Pet. Ex. A at 10.)

Finding in favor of Alliance on its breach of contract claim and claim for attorneys' fees, the

arbitrator granted it an award totaling $2,213,944.36.  (Id. at 10-14.)  On March 8, Ovadiah

submitted a letter seeking an annulment of the award and alluding to "serious health reasons" as

the cause of his needing a postponement of the February 5 session.  (Ovadiah Aff. Ex. F at 82,

85.)  The arbitrator emailed Ovadiah to inform him that he would not be taking any action in

response to his letter because "[o]nce a final award is issued, the arbitrator no longer has

authority, and any further concerns must be addressed to the appropriate court."  (Pet'r. Resp.

Ex. M, ECF 15-13 at 1.)

         Alliance filed its Petition to confirm the arbitration award with this Court on

March 28, 2024.  (ECF 1.)  In addition to the $2,213,944.36 awarded to it, Alliance seeks pre-

judgment interest from February 21, 2024, the date of the award's issuance, post-judgment

interest, and its costs in this proceeding.  (Pet. at 4.)  At the initial pretrial conference held on

May 31, the Court ordered Wadiah Capital to file its response to the Petition by June 14.  Wadiah

Capital did not do so prior to the Court's deadline.  On June 18, Wadiah Capital submitted a

sworn affidavit from Ovadiah in opposition to the Petition.  (ECF 13.)  The affidavit requests that

the Court "dismiss or vacate the arbitration award," and primarily takes issue with the decision to

proceed with the February 5 hearing in Ovadiah's absence.  (Ovadiah Aff. ¶¶ 9-14, 18.)  It also

requests that if judgment is entered in favor of Alliance that the Court file it under seal in order to protect Wadiah Capital's reputation.  (Id. ¶ 20.)  Alliance has filed a letter motion to seal the affidavit because it contains unredacted financial account numbers.  (ECF 14 at 1-2.)

## DISCUSSION

### Legal Standard

The confirmation of an arbitration award pursuant to section 9 of the FAA is normally "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court."  D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006) (quoting Florasynth, Inc. v. Pickholz, 750 F.2d 171, 176 (2d Cir. 1984)).  Indeed, a court "must grant" an award unless it is "vacated, modified, or corrected."  9 U.S.C. § 9.  Accordingly, "[a] court's function in confirming or vacating an arbitration award is severely limited."  Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp., 103 F.3d 9, 12 (2d Cir. 1997) (quoting Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sales Corp., 274 F.2d 805, 808 (2d Cir. 1960)).  An award should be enforced when there is "a barely colorable justification for the outcome reached" by the arbitrator.  D.H. Blair, 462 F.3d at 110 (quoting Landy Michaels Realty Corp. v. Local 32B-32J, Service Employees International Union, 954 F.2d 794, 797 (2d Cir. 1992)).

"A party moving to vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation is very high."  Id.  The FAA sets out four narrow grounds for vacating an award:

> (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them

that a mutual, final, and definite award upon the subject matter submitted was
not made.

9 U.S.C. § 10(a)(1)-(4).

A court "treat[s] a petitioner's application to confirm or vacate an arbitral award
as 'akin to a motion for summary judgment.'" City of New York v. Mickalis Pawn Shop, LLC,
645 F.3d 114, 136 (2d Cir. 2011) (quoting D.H. Blair, 462 F.3d at 109). As such, the Court's
decision is based on the record before it, particularly Alliance's Petition, Ovadiah's affidavit
submitted by Wadiah Capital, the exhibits included with the Petition and affidavit, and
Alliance's additional supporting exhibits.

The FAA's Notice Requirement

Wadiah Capital filed an affidavit from Ovadiah in opposition to Alliance's
Petition to confirm the award on June 18, 2024. (ECF 13.) The affidavit requests that the Court
"dismiss or vacate the arbitration award." (Ovadiah Aff. ¶ 18.) To the extent it seeks vacatur of
the award or its dismissal, the functional equivalent of vacatur, it is untimely.

The FAA provides that "[n]otice of a motion to vacate, modify, or correct an
award must be served upon the adverse party or his attorney within three months after the award
is filed or delivered." 9 U.S.C. § 12. The Second Circuit has made clear that section 12
"provides no express exception to its strict three-month limitations period" and, therefore, "a
party may not raise a motion to vacate, modify, or correct an arbitration award after the three
month period has run." Dalla-Longa v. Magnetar Capital LLC, 33 F.4th 693, 697 (2d Cir. 2022)
(quoting Florasynth, 750 F.2d at 175).

JAMS filed the arbitration award on February 22, 2024. (Pet. Ex. C at 23.)
However, it was not until June 18—nearly four months later—that Wadiah Capital submitted the
affidavit. (ECF 13.) By that point, the three-month limitations period had already run. The

Court also declines to treat Wadiah Capital's grounds for vacating the arbitration award set forth in the affidavit as a valid defense to Alliance's Petition. See Florasynth, 750 F.2d at 175 (holding that under section 12 "a party may not raise a motion to vacate, modify, or correct an arbitration award after the three month period has run, even when raised as a defense to a motion to confirm"); see also New York City District Council of Carpenters Pension Fund v. Eastern Millenium Construction, Inc., 03-cv-5122 (DAB), 2003 WL 22773355, at *2 n.2 (S.D.N.Y. Nov. 21, 2003) ("Because Defendant neither responded to Plaintiffs' application for confirmation nor filed its own motion for vacation, correction or modification within three months of the issuance of the award, it has waived its right to contest confirmation."). Accordingly, Wadiah Capital is not entitled to the relief it seeks.

Confirmation of the Award

Even if the Court were to consider the merits of Wadiah Capital's arguments against confirmation, the Court would still confirm the arbitration award. As reflected in Ovadiah's affidavit, Wadiah Capital's opposition primarily stems from the arbitrator's decision to proceed with the February 5 arbitration hearing absent Ovadiah.[1] Wadiah Capital contends that this decision did not comport with fundamental principles of fairness and due process under the FAA, violated several of JAMS's own arbitration rules, and reflected bias on the part of the arbitrator, whom Wadiah Capital claims JAMS unjustly failed to remove despite its requests. (Ovadiah Aff. ¶¶ 8, 9, 14, 15.) Although Wadiah Capital does not expressly tie its arguments to

---

[1] Wadiah Capital also raises the argument that it was non-party Wadiah Ventures Inc., not Wadiah Capital, that entered into the Payment Agreement with Alliance and agreed to the arbitration process. (Ovadiah Aff. ¶¶ 4-7.) There is no merit to this contention. The Payment Agreement plainly states that it "is entered into . . . by and between Alliance Capital International Bank Inc. ("Alliance") . . . and Wadiah Capital ("Wadiah")." (Pet. Ex. B at 17.) "Wadiah" is also the party that is named on the Payment Agreement's signature page. (Id. at 22.) Consistent with this, the arbitrator noted in the Final Award that "the Demand for Arbitration and the relevant contractual documents identify the relevant party as Wadiah Capital." (Pet. Ex. A at 6 n.1.)

any of the four grounds for vacating an award set out in section 10 of the FAA, 9 U.S.C. § 10(a)(1)-(4), they appear to most directly implicate sections 10(a)(3) and 10(a)(2).

Pursuant to section 10(a)(3), a court may vacate an arbitration award "where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced." 9 U.S.C. § 10(a)(3). "In evaluating an arbitrator's decision to deny a postponement, courts consider whether there existed a reasonable basis for the arbitrator's decision and whether the denial created a fundamentally unfair proceeding." Mandell v. Reeve, 10-cv-6530 (RJS), 10-cv-7389 (RJS), 2011 WL 4585248, at *4 (S.D.N.Y. Oct. 4, 2011) (quoting Alexander Julian, Inc. v. Mimco, Inc., 29 F. App'x 700, 703 (2d Cir. 2002)) (internal quotation marks omitted), aff'd, 510 F. App'x 73 (2d Cir. 2013). An arbitrator "enjoy[s] broad latitude in exercising their discretion to grant or deny a request to adjourn." Id.

Here, the record shows that the arbitrator had a reasonable basis for concluding that postponement or cancellation of the February 5 hearing was unwarranted. Almost a month prior, Ovadiah personally agreed to the hearing date during an initial conference call with Alliance's counsel and the arbitrator. (Pet'r. Resp. ¶ 9; Pet. Ex. A at 9.) JAMS subsequently issued a "Notice of Hearing" to the parties. (Pet. Ex. C at 23.) Therefore, Ovadiah knew well in advance that the arbitration hearing would take place on February 5. JAMS's removal of the hearing from the calendar on February 1 due to Wadiah Capital's own failure to pay its arbitration fees does not change that fact. (Pet'r. Resp. Ex. K at 4-5.) Alliance took it upon itself to promptly rectify the issue such that the arbitrator reinstated the hearing date and JAMS sent new Zoom videoconference links to the parties the next day. (Id. at 1-5; Pet'r. Resp. Ex. E at 6-

7, 9-10.)  Nonetheless, Ovadiah waited until the morning of February 5 to notify the participants

that he would be unable to attend.  (Pet'r. Resp. Ex. E at 7.)  He failed to provide any clear

reason to the arbitrator for his inability to participate in the hearing, simply alluding to "other

commitments scheduled," "a private matter," and "a personal matter."  (Id. at 2, 3, 7.)  Ovadiah's

vagueness continued after the hearing, with him citing "serious health reasons" for why he could

not attend.  (Ovadiah Aff. Ex. F at 85.)  Ovadiah also gave no indication as to why a substitute

representative could not take part in the hearing on behalf of Wadiah Capital.  Under these

circumstances, the arbitrator's decision to go forward with the hearing "in light of the likely

prejudice to Alliance from further delay and Mr. Ovadiah's failure to specify the 'personal

matter' purportedly precluding his attendance" was reasonable.  (Pet. Ex. A at 10.)

   Furthermore, the Court cannot conclude that the arbitrator's decision resulted in a

fundamentally unfair proceeding.  Wadiah Capital was afforded a full opportunity to attend and

present its evidence at the scheduled hearing.  The fact that Ovadiah ultimately chose not to

participate in the hearing does not by itself render the proceeding fundamentally unfair.  See

Seneca Insurance Co. Inc. v. Dowers, 98-cv-4084 (LAP), 1999 WL 144497, at *6 (S.D.N.Y.

Mar. 17, 1999) (holding that proceedings were not fundamentally unfair because "[t]hat [the

respondent] chose to absent himself from that hearing, either by design or poor planning, does

not change the fact that the opportunity [to introduce evidence] was presented"); Bisnoff v. King,

154 F. Supp. 2d 630, 639 (S.D.N.Y. 2001) (finding that panel's decision not to delay hearing was

fundamentally fair where the petitioner "was unable to present evidence at the hearing as a result

of his personal choice" to not appear via telephone or videotaped deposition).  In addition, the

arbitrator rendered the Final Award on the basis of the evidence that Alliance presented, rather

than Wadiah Capital's failure to appear at the hearing or submit its own evidence.  He heard the

testimony of two Alliance witnesses, considered documentary evidence, and requested supplemental briefing from Alliance on the issue of damages.  (Pet. Ex. A at 7-10, 12; Ovadiah Aff. Ex. F at 97.)  The arbitrator's reliance on the evidence further supports the Court's determination that the proceeding was not fundamentally unfair.  See Euromarket Designs, Inc. v. McGovern & Co., LLC, 08-cv-7908 (LTS) (DCF), 2009 WL 2868725, at *5 (S.D.N.Y. Sept. 3, 2009) (finding no denial of fundamental fairness due to arbitrator's refusal to postpone hearing where the arbitrator "carefully weighed the evidence presented and did not simply rely on Respondent's failure to appear or to submit evidence in reaching his determination").

    Section 10(a)(2) provides that a court may also vacate an arbitration award "where there was evident partiality or corruption" in an arbitrator.  9 U.S.C. § 10(a)(2).  Evident partiality "will be found where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration."  Certain Underwriting Members of Lloyds of London v. Florida, Department of Financial Services, 892 F.3d 501, 505 (2d Cir. 2018) (quoting Morelite Construction Corp. v. New York City District Council Carpenters Benefit Funds, 748 F.2d 79, 84 (2d Cir. 1984)).  In this case, the arbitrator's decision to proceed with the February 5 hearing absent Ovadiah does not lead to the conclusion that he was partial to Alliance or held some bias against Wadiah Capital.  As detailed above, the arbitrator had a reasonable basis to decline to postpone or cancel the hearing, namely Ovadiah's dilatory conduct and failure to provide a clear reason for his unavailability.  Wadiah Capital has not pointed to any evidence showing that the arbitrator's decision was motivated by anything other than a desire to achieve a prompt resolution of the parties' dispute without further delay.  Of course, these facts would not provide adequate grounds to challenge the arbitrator's continued service due to bias.

The Court has considered Wadiah Capital's remaining arguments, including purported violations of the JAMS arbitration rules, and concludes that they too fail to provide a basis from which to vacate the arbitration award under the FAA.[2]  In any event, the Court previously determined that Wadiah Capital is time barred from requesting that the award be vacated or opposing confirmation.  There being no grounds on this record upon which to vacate the award, Alliance's Petition is granted.  See 9 U.S.C. § 9 (providing that a court "must grant" an award unless it is "vacated, modified, or corrected").

Pre-judgment Interest, Post-judgment Interest, and Costs

Alliance seeks pre-judgment interest from February 21, 2024, the date the award was issued, to the date of judgment at the "statutory rate," presumably New York's rate of 9% simple interest.

"The decision whether to grant prejudgment interest in arbitration confirmations is left to the discretion of the district court." Evan K. Halperin Revocable Living Trust v. Charles Schwab & Co., Inc., 21-cv-8098 (PKC), 2022 WL 4334655, at *8 (S.D.N.Y. Sept. 19, 2022) (quoting Service Employees International Union v. Stone Park Associates, LLC, 326 F. Supp. 2d 550, 555 (S.D.N.Y. July 22, 2004)), aff'd, 22-2748-cv, 2023 WL 8253681 (2d Cir. Nov. 29, 2023).  Nonetheless, there is a presumption in this Circuit in favor of awarding pre-judgment interest on a motion to confirm an arbitration award.  Waterside Ocean Navigation Co., Inc. v. International Navigation Ltd., 737 F.2d 150, 154 (2d Cir. 1984).  Additionally, an award of pre-judgment interest "is appropriate where the agreement between the parties states that an arbitration decision is final and binding."  Charles Schwab, 2022 WL 4334655, at *8.  "It is

---

[2] Wadiah Capital has failed to establish a violation of the JAMS rules, let alone one sufficient to require vacatur of the award.

standard within the Second Circuit to grant interest at a rate of nine percent per annum, the rate of prejudgment interest under New York State law." Id.

The Payment Agreement's arbitration provision states that "the decision of the Arbitrator will be final and binding to the fullest extent permitted by law and enforceable by any court having jurisdiction thereof." (Pet. Ex. B at 19 § 2.4.) Wadiah Capital makes no argument in Ovadiah's affidavit that Alliance is not entitled to pre-judgment interest. In turn, Wadiah Capital fails to overcome the presumption in favor of pre-judgment interest. Although Alliance has not specified a rate of pre-judgment interest, the Court awards it pre-judgment interest at a rate of nine percent per annum, calculated from February 21, 2024, through the date of the entry of the judgment in this action.

With respect to post-judgment interest, it is available to the judgment creditor as a matter of law. 28 U.S.C. § 1961(a) ("Interest shall be allowed on any money judgment in a civil case recovered in a district court.").

Regarding costs, Rule 54(d)(1), Fed. R. Civ. P., allows costs to the prevailing party unless otherwise ordered and there is no justifiable reason presented why the Court ought to depart from the Rule. Costs may be taxed by the Clerk of Court within 30 days after the entry of final judgment. See Loc. Civ. R. 54.1.

## CONCLUSION

For the reasons explained above, Alliance's Petition is GRANTED as to confirmation of the arbitration award and pre-judgment interest. Post-judgment interest runs as a matter of law and Alliance is free to apply to the Clerk of Court for the taxation of allowable costs.

The Clerk of Court is directed to enter judgment in favor of Alliance in the amount of $2,213,944.36, plus pre-judgment interest at a rate of nine percent per annum, calculated from February 21, 2024, through the date of the entry of the judgment.

Because Wadiah Capital's unsubstantiated concern for its reputation is far outweighed by "the strong presumption of public access to judicial decisions," the Court declines to file this Opinion and Order under seal. Liberty Re (Bermuda) Ltd. v. Transamerica Occidental Life Insurance Co., 04-cv-5044 (NRB), 2005 WL 1216292, at *6 (S.D.N.Y. May 23, 2005). Wadiah Capital is, however, directed to file to ECF a copy of Ovadiah's affidavit redacting only the financial account numbers identified in Alliance's letter motion to seal the affidavit. (ECF 14 ¶ 6.)

The Clerk of Court is further directed to terminate the motions at ECF 12, 14, 15, 16, and 17.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
        February 7, 2025